# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES for the use ) <br> and benefit of MDI SERVICES, ) <br> LLC, and MDI SERVICES, LLC, ) <br> ) <br> Plaintiffs, ) <br> vs. ) <br> ) <br> FEDERAL INSURANCE ) <br> COMPANY, and SAUER ) <br> INCORPORATED, ) <br> ) <br> Defendants. ) | Civil Action Number <br> **5:13-cv-2355-AKK** |

## MEMORANDUM OPINION

The United States and MDI Services, LLC ("MDI") (collectively, "Plaintiffs"), filed this action against Sauer Incorporated ("Sauer") and the Federal Insurance Company ("FIC") (collectively, "Defendants"), seeking enforcement of a payment bond under the Miller Act, 40 U.S.C. § 3131, *et seq.* (Count I), and alleging state law claims for breach of contract (Count II), work and labor done (Count III), and a violation of the Prompt Pay Act, Ala. Code § 8-29-1, *et seq.* (Count IV). Doc. 1. Before the court is Defendants' motion to transfer this case to the Middle District of Florida pursuant to 28 U.S.C. § 1404. Doc. 14. The motion is fully briefed. *See* docs. 14, 24, and 29. For the reasons outlined below,

Defendants' motion is due to be **GRANTED**.

## I.  BACKGROUND

Sauer entered into a contract with the United States to construct the Central Steam Facility Construction and Steam Infrastructure Repairs Project (the "Project") located at the Marshall Space Flight Center in Huntsville, Alabama. Doc. 1 ¶ 11. FIC, as surety, issued a payment bond on behalf of Sauer pursuant to the Miller Act, 40 U.S.C. § 3131(b)(2). *Id.* ¶ 12. Thereafter, MDI entered into a Subcontract Agreement (the "Subcontract") with Sauer to provide labor, services, and materials for the Project. *Id.* ¶ 14.

MDI timely fabricated and delivered the necessary materials to the Project site and was ready to commence work pursuant to Sauer's construction schedule. *Id.* ¶¶ 15–18. However, Sauer caused several delays by failing to perform its own work in accordance with its construction schedule, causing MDI to demobilize from the Project after sending written notice and giving Sauer a chance to respond. *Id.* ¶¶ 19–22. After several months, Sauer requested that MDI remobilize to the Project because Sauer had performed some of its work and was on schedule to perform its remaining work under a revised construction schedule. *Id.* ¶¶ 24–25. As a result, MDI remobilized, but discovered that Sauer failed to properly perform some of its work, requiring MDI to perform substantial corrective work. *Id.* ¶ 26.

Additionally, Sauer failed to timely perform its remaining work under the revised construction schedule, causing more delays. *Id.* ¶ 27. One year later, Sauer terminated MDI. *Id.* ¶ 30. At the time, MDI's subcontract work was approximately 90% complete and Sauer had not compensated MDI for its provided materials that Sauer incorporated into the Project. *Id.* ¶¶ 30–31.

## II.  DISCUSSION

Defendants ask the court to transfer this action to the Middle District of Florida based on a contractual forum-selection clause. Doc. 14. Specifically, the clause in the Subcontract states that "either party may seek to have the dispute resolved in any court having jurisdiction over Sauer's office address written above." Doc. 1-3 at 10. The Subcontract lists Sauer's address in Jacksonville Florida, which is in the Middle District of Florida. *Id.* at 2. Based on this language, Defendants contend that transfer is the proper action in this case.

A district court may transfer a civil action to any other district in which the plaintiff may have filed the action "for the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In addressing a motion under § 1404(a), the court must first establish that the plaintiff could have originally filed the case in the venue to which a movant seeks to transfer the case, and, second, determine if transfer is justified. *Stiefel Labs., Inc. v. Galderma*

*Labs., Inc.*, 588 F. Supp. 2d 1336, 1338 (S.D. Fla. 2008). Ordinarily, the burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). Ultimately, "[t]he decision to transfer a case to another district is left to the sound discretion of the trial court." *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991).

### A.     Venue would be Proper in The Middle District of Florida

Although the Miller Act provides that Plaintiffs must bring this civil action "in the United States District Court for any district in which the contract was to be performed and executed," 40 U.S.C. § 3133(b)(3), this provision is "merely a venue requirement" and not jurisdictional. *See F.D. Rich Co. v. U.S. for Use of Indus. Lumber Co.*, 417 U.S. 116, 125 (1974). As a result, a valid forum-selection clause can trump the Miller Act's venue provision. *In re Fireman's Fund Ins. Cos.*, 588 F.2d 93, 95 (5th Cir. 1979); *Texas Const. Co. v. U.S. for Use of Caldwell Foundry & Mach. Co.*, 236 F.2d 138, 143 (5th Cir. 1956). Consequently, in light of the forum-selection clause in the Subcontract here, *see* doc. 1-3 at 10, the court finds that Plaintiffs could have originally filed this case in the Middle District of Florida.

**B.     Transfer is Justified**

Because venue would be proper in the transfer forum, the court must now determine whether transfer is justified in this case. Normally, the court would utilize and weigh the following factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative fact; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). However, a valid forum-selection clause alters the court's § 1404(a) analysis. *See Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 579 (2013). In such cases, the plaintiff bears the burden of establishing that transfer is unwarranted, and the plaintiff's choice of forum and the parties' private interests merit no weight, effectively limiting the court's consideration to arguments about public-interest factors. *Id.* at 581–82. "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)).

Plaintiffs argue that the court should deny the transfer because, unlike the "mandatory" forum-selection clause at issue in *Atlantic Marine*, the forum-selection clause in the Subcontract is "permissive." Doc. 24 at 7. Indeed, the forum-selection clause in *Atlantic Marine* "stated that all disputes between the parties '*shall* be litigated in the Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk Division.'" 134 S. Ct. at 575 (emphasis added) (quoting *In re Atlantic Marine Constr. Co.*, 701 F.3d 736, 737-38 (5th Cir. 2012)). The use of the imperative "shall" indicates that the Supreme Court had before it a mandatory forum-selection clause that dictated an exclusive forum for litigation under the contract. *See Global Satellite Communication Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004). This fact is significant because the Supreme Court reasoned that the mandatory forum-selection clause at issue in *Atlantic Marine* "represented the parties' agreement as to the most proper forum," and "enforcement of [the clause], bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atlantic Marine*, 134 S. Ct. at 581 (quotation marks omitted).

A permissive forum-selection clause, on the other hand, only "authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere."

*Global Satellite*, 378 F.3d at 1272. Thus, the parties to a permissive forum-selection clause only bargain for what *may* constitute a proper forum, rather than what constitutes the exclusive forum for litigating disputes. In that respect, keeping a case in the plaintiff's chosen forum despite a permissive forum-selection clause would not "unnecessarily disrupt the parties settled expectations." *Id.* at 583. Accordingly, the considerations relevant to altering the § 1404(a) analysis for mandatory forum-selection clauses would not apply in this case if Plaintiffs are correct that the Subcontract's forum-selection clause is permissive.

To support their contention that the Subcontract's forum-selection clause is permissive, Plaintiffs point to the clause's use of the term "may." *See Lane v. Cent. Bank of Alabama, N.A.*, 756 F.2d 814, 817 (11th Cir. 1985) (interpreting jurisdictional provision of the Bank Holding Company Act). In doing so, Plaintiffs ignore that in interpreting a contract, "the court must examine more than an isolated sentence or term; [rather,] it must read each phrase in the context of all other provisions." *Royal Ins. Co. of Am. v. Thomas*, 879 So. 2d 1144, 1154 (Ala. 2003) (citations and internal quotations marks omitted).[1] In that regard, the court notes that the Subcontract provides a progressive, mandatory dispute resolution

---

[1] Alabama's rules of contractual interpretation apply because the Subcontract provides that it "shall be construed with the laws of the state in which the Project is located." Doc. 1-3 at 11–12.

process in the event of a dispute arising under the Subcontract.[2] Only after several attempts to settle the dispute with Sauer does the forum-selection clause come into play. Specifically, the Subcontract provides that "[i]f [MDI] is dissatisfied with such decision, either party may seek to have the dispute resolved in any court having jurisdiction over Sauer's office address written above."[3] *Id.* It is clear, in the context of the dispute resolution process, that the term "may" only applies to whether MDI decides to pursue the dispute in court. In other words, Sauer is not giving MDI permission to pursue the action in a specific forum; rather, it is *finally* giving MDI permission to bring suit after unsuccessful attempting to resolve the dispute with Sauer. Accordingly, the court finds that the Subcontract's forum-selection clause is mandatory.

Turning to the modified § 1404(a) analysis, Plaintiffs have presented no evidence that the transfer forum is congested, and there is no local interest that

---

[2] First, MDI "agrees to give Sauer notice within ten (10) days of when the dispute first arises, or else [MDI] waives all rights to claim additional compensation or a time extension for it." Doc. 1-3 at 10. Thereafter, MDI "will attempt to settle the dispute in the first instance with Sauer's Project Manager." *Id.* If that does not resolve the dispute, MDI "may, within the next ten (10) days, appeal to the next level of Sauer's management at Sauer's Jacksonville, Florida office for a decision." *Id.*

[3] Plaintiffs' argument that venue in this court is proper under the forum-selection clause is unavailing. *See* doc. 24 at 7–8. Although the court has jurisdiction over Sauer pursuant to the Miller Act, the forum-selection clause clearly states that the dispute is to be brought "in any court having jurisdiction over *Sauer's office address* listed above." Doc. 1-3 at 10. This is obviously a territorial limitation.

militates in favor of deciding in Alabama a controversy primarily between a Florida corporation and a Pennsylvania Corporation with an office in Florida. Moreover, by agreeing in the Subcontract that Alabama law would govern, the parties knew that Alabama law would apply at the time they decided to litigate in Florida any dispute arising out of the Subcontract. Consequently, this is not an "unusual case[;] therefore, 'the interest of justice' is served by holding [MDI] to their bargain." *Atlantic Marine*, 134 S. Ct. at 583.

### III. CONCLUSION

The court finds, in its discretion and based on the totality of the circumstances, that the balance of factors weighs heavily in favor of transferring this case to the Middle District of Florida. Accordingly, Defendants' motion to transfer, doc. 14, is due to be **GRANTED**. The court will issue an order consistent with this opinion contemporaneously.

**DONE** this 17th day of April, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE